# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Cr. No. 04-00076-01S |
| vs. | ) | |
| BERNARD CARBONE, | ) | |
| Defendant. | ) | |

## MOTION TO MODIFY SENTENCE: COMMUNITY SERVICE

Now comes the Defendant who requests the Court modify his sentence. The Court has ordered one year of 20 hours per week of Community Service in addition to 5 months of incarceration and 5 months of home confinement. The burden of 20 hours per week for a year is a hardship as it very substantially impacts the Defendant's ability to earn a living, support himself, and to meet his financial obligations.

The Defendant requests the Court reduce his Community Service obligation to 4 hours per week or a total of 200 hours.

Respectfully submitted,

Justin S. Holden, Esq., RIBA # 1847
Holden & O'Brien, Inc.
170 Westminster Street, Suite 301
Providence, RI 02903
Phone: (401) 421-1300
Fax: (401) 421-3380

## CERTIFICATION

I hereby certify that I sent a true copy of the within document by regular mail to **Timothy D. Belevetz, Esq.** and **John P. McAdams, Esq.**, U.S. Department of Justice, Tax Division, Northern Criminal Enforcement Section, P.O. Box 972, Ben Franklin Station, Washington, DC 20044; **Luis M. Matos, Esq.**, US Attorneys Office, 50 Kennedy Plaza, Providence, RI 02903; and to **Brian Pletcher,** United States Probation Officer, 36 Exchange Terrace, Providence, RI 02903 on the 2nd day of September, 2005.

Nadia E. O'Brien

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Cr. No. 04-00076-01S |
| v. | ) | |
| BERNARD CARBONE, | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO MODIFY SENTENCE: COMMUNITY SERVICE

The Court has imposed a 20 hour per week Community Service obligation on the Defendant in addition to five months incarceration and five months of home confinement.

The rules of home confinement pretty much eliminate the Defendant's ability to do Community Service nights or on Sundays. At the same time, the agencies can only use those services during the normal working day. Attached hereto is a letter from Providence Community Action which represents what is currently proposed as Mr. Carbone's Community Service.

It is apparent that this proposal of 4 hours a day each and every weekday (from noon to 4pm) would impose a sever hardship on the Defendant.

Community Service may be mandated as an alternative to other punishment or in combination with other punishment. The undersigned believes however, that 20 hours per week is well outside normal parameters in case where the Defendant has served jail time (in this case at the high security MDC facility in Brooklyn) and who needs to pursue full time employment to pay his bills, including his obligation to the Internal Revenue Service.

As the Court is aware, this Defendant is in serious financial trouble. It is not appropriate that he lose his ability to put in anything close to a full work week because of the Community Service burden the Court has imposed on top of his incarceration.

The Court has imposed one year of 20 hours per week or 1040 hours. The Sentencing Guidelines have very little to say about Community Service[1]. However, the Application Note to §5F1.3 makes it clear that normally 400 hours would be a ceiling. Here, where the Community Service is added on to what in itself was a middle-of-the-Guidelines sentence, it is excessive when it imposes a financial hardship on the Defendant.

In a pre-guidelines case, the Ninth Circuit held that when imposing charitable work requirements as a condition of probation, a judge must not order a work schedule which leaves inadequate time for paid employment. Higdon v. United States, 627 F.2d 893 (9th Cir. 1980).

Clearly doing Community Service each weekday from noon to four o'clock for a year would financially crush this Defendant.

In United States v. Graham, 946 F.2d 19 (4th Cir. 1991) the Defendant appealed a sentence of 500 hours of Community Service over three years of supervised release and a fine with no incarceration or home confinement. The Fourth Circuit looked to the 400 hour limit in the commentary to §5F1.3 and said:

> "Assuming that a failure to follow this commentary language is a sentence outside the applicable guidelines range...we do not view this portion of Graham's sentence as unreasonable."

It must be noted that Mr. Graham in a drug case got no incarceration and he was found to be "a person of such substantial wealth". His sentence of 500 hours over three years (slightly over 3 hours per week) was no hardship. While Mr. Graham's sentence was upheld, it is illustrative of how much harsher the impact of this sentence is on this Defendant.

In United States v Norma El-Samad, ______ F.3rd _______ (10th Cir. Aug. 22, 2005), a copy of which is attached hereto as Exhibit B, the Defendant Norma El-Samad appealed her sentence in a drug and money laundering case. She was given three years of supervised release (after a jail term) with a condition of 20 hours per week of Community Service **while she was unemployed** or employed part-time and **four hours per week while employed**. While Ms. El-Samad's sentence was upheld, it was clear from the Court's discussion that a sentence of more than four hundred hours would be very unusual. If also illustrates that four hours per week for an employed person would be more the appropriate standard.

Often Community Service is imposed for specific purposes not present in this case. In United States v. Paul, 57 Fed. App. 597 (6th Cir. 2003) 300 hours of Community Service imposed on a doctor convicted of tax fraud, bank fraud and mail fraud was

[1] Community Service is not even listed in the otherwise comprehensive United States Sentencing Commission's Annual Federal Sentencing Statistics by State, District and Circuit.

upheld as a condition designed to be related to the doctor's "rehabilitation" so the doctor would learn how others live.

An imposition of twenty hours per week was upheld where the individual was very wealthy and did not work. United States v. Posner, 694 F. Supp. 881 (South District of Florida 1988).

While there is a dearth of decided case law and wide discretion in the Court to impose sentence, the undersigned believes that the Community Service imposed on this Defendant is unusual and extraordinary.

If the Defendant's obligation were reduced to 8 hours per week it would still cost him a day's pay each week, a price he can ill afford.

An imposition of 200 hours to be served 4 hours per week would be a reasonable imposition on the Defendant and a real benefit to the organization receiving the benefit of his service.

Respectfully submitted,

Justin S. Holden, Esq.
RIBA 1847
Holden & O'Brien, Inc.
170 Westminster Street, Suite 301
Providence, RI 02903
Phone: (401) 421-1300
Fax: (401) 421-3380

## CERTIFICATION

I hereby certify that I sent a true copy of the within document by regular mail to **Timothy D. Belevetz, Esq.** and **John P. McAdams, Esq.**, U.S. Department of Justice, Tax Division, Northern Criminal Enforcement Section, P.O. Box 972, Ben Franklin Station, Washington, DC 20044; **Luis M. Matos, Esq.**, US Attorneys Office, 50 Kennedy Plaza, Providence, RI 02903; and to **Brian Pletcher,** United States Probation Officer, 36 Exchange Terrace, Providence, RI 02903 on the 2nd day of September, 2005.

Nadia E. O'Brien

EXHIBIT
A

# Providence Community Action

518 Hartford Ave., Providence, Rhode Island 02909
(401) 273-2000 Fax (401) 273-2007

Paul A. MacDonald
Chairman of the Board

Frank Corbishley
Executive Director

David N. Cicilline
Mayor

September 1, 2005

To Whom It May Concern:

It is my understanding that Mr. Bernard Carbone, 9 Poppy Hill Drive, Johnston, RI 02909 has been mandated by the Court to 20 hours of Community Service.

ProCAP will be more than happy to offer him 20 hours of service; however, due to the requirement of the program he would be working in, we would need him five days a week from 12:00 – 4:00 pm.

Sincerely,

Frank Corbishley

Frank Corbishley
Executive Director

FC:ew

B



**Briefs and Other Related Documents**

Only the Westlaw citation is currently available.

This case was not selected for publication in the Federal Reporter.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)

United States Court of Appeals,
Tenth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Norma EL-SAMAD, Defendant-Appellant.
**No. 03-6166.**

Aug. 22, 2005.

Ozia M. McKinney-Foster, Asst. U.S. Attorney, Robert G. McCampbell, U.S. Attorney, Randal A. Sengel, Scott E. Williams, Office of the United States Attorney, Oklahoma City, OK, for Plaintiff-Appellee.

Raymond P. Moore, Fed. Public Defender, Jenine M. Jensen, Asst. F .P. Defender, Office of the Federal Public Defender District of Colorado and Wyoming, Denver, CO, for Defendant-Appellant.

Before HARTZ, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and McCONNELL, Circuit Judge.

**ORDER AND JUDGMENT** [FN*]

FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

ROBERT H. McWILLIAMS, Senior Circuit Judge.

***1** In a 47-count indictment filed in the United States District Court for the Western District of Oklahoma, Norma El-Samad ("El-Samad"), and three others were charged with various drug and drug related crimes. El-Samad, and the others, were charged in Count One with conspiring with each other, and others, from January 1999 to July 2001, to possess and distribute pseudoephedrine, a listed chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(2).

In Counts 2 through 38, El-Samad was charged with "Structuring Transactions to Avoid Reporting Requirements," in violation of 31 U .S.C. §§ 5322(b) and 5324(a)(3). Thirty seven transactions were separately listed involving transactions totaling over three hundred thousand dollars. She was not named as a defendant in the remaining counts.

In a joint trial with one of the four named defendants in the indictment, El-Samad was convicted on Count 1, and on nine counts of structuring transactions to avoid reporting requirements. El-Samad was sentenced to 97 months on Count 1 and 60 months on each of the remaining counts, all counts to be served concurrently. She was also ordered to serve three years of supervised release after her release from prison. In connection with the latter, the district court imposed the following conditions on her supervised release:

> And she'll perform community service for one year immediately following her release at the rate of four hours per week while she's employed

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

full-time and 20 hours per week while she's employed less than full time.

Some procedural background will perhaps put the present controversy in focus. El-Samad was represented at trial by retained counsel, who, by order of the district court, was allowed to withdraw from the case after trial. This court appointed counsel to represent El-Samad on appeal. Appointed counsel then filed a so-called Anders brief in this Court. *Anders v. California,* 386 U.S. 738 (1967). At the same time, counsel also filed with this Court a motion to withdraw as counsel for El-Samad, stating that the ground he asserted on behalf of El-Samad in his brief was "frivolous." In that brief, counsel asserted, at El-Samad's request, that there was insufficient evidence to support her conviction.

Pursuant to an order of this Court, El-Samad filed a pro-se response tocounsel's motion to withdraw from the case. Her position was that her appeal had "merit" because she had been convicted "on testimony that was not true" and that her trial lawyer was "ineffective" and had not called "any witnesses on behalf of the appellant." In her response, El-Samad also stated that her court-appointed appellate counsel had "never interviewed" her and concluded by stating that she "had a constitutional right to full review" of her trial. She asked "that she be allowed to continue with her appeal, and that either co-counsel be appointed or self representation be allowed."

*2 The government filed a brief in response to the opening brief submitted by El-Samad's appointed attorney, in which it agreed with opposing counsel that the appeal was frivolous and that the appeal should be dismissed because it was frivolous. As to El-Samad's suggestion that she had "ineffective assistance" in the district court, the government noted that generally a claim of ineffective assistance of trial counsel is brought in a collateral proceeding, and not in a direct appeal, citing *United States v. Galloway,* 56 F.3d 1239, 1240 (10th Cir.1995)(*en banc* ).

This Court on December 2, 2003, granted counsel's motion to withdraw and appointed the Federal Public Defender of Colorado to represent El-Samad on appeal, which he has done.

On appeal, the Public Defender does not challenge El-Samad's conviction on any ground, nor does he challenge her period of incarceration or the fact that the court ordered three years of supervised release. He, however, does challenge the court's order as it relates to the imposition of "community service" to be rendered during her period of supervised release.

As concerns "community service," U.S.S.G. § 5F1.3 and the commentary thereafter, provides as follows:

**5F1.3 *Community Service***

Community service may be ordered as a condition of probation or supervised release.

*Commentary*

*Application Note:*

1. Community service generally should not be imposed in excess of 400 hours. Longer terms of community service impose heavy administrative burdens relating to the selection of suitable placements and the monitoring of attendance. [FN1]

FN1. "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline. *Stinson v. United States,* 508 U.S. 36, 38 (1993); *United States v. Robertson,* 350 F.3d 1109, 1112 (10th Cir.2003).

Counsel points out that if El-Samad performs 4 hours a week of community service for one year, she will be rendering 208 hours of service, whereas, if she would render 20 hours of service per week, for one year, she would perform 1040 hours. The latter, of course, would be substantially more than the suggested 400 hour limitation referred to in the commentary to U.S.S.G. § 5F1.3. Counsel asks that we reverse that portion of her sentence and remand that one matter for re-sentencing by the district court wherein it would not impose a community

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

service sentence of more than 400 hours.

There was no contemporaneous objection to the sentence imposed by the district court. When a defendant fails to object to a condition of supervised release that is among the conditions recommended in the Sentencing Guidelines, the defendant has waived the objection. *United States v. Barajas,* 331 F.3d 1141, 1145 (10th Cir.2003). Hence, it is agreed that we review the propriety of the sentence imposed, now raised on appeal, for plain error.

U.S.S.G. § 1B1.7, under the heading "Significance of Commentary," states that "[f]ailure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal. *See* 18 U.S.C. § 3742."

We note at the outset that § 5F1.3 is directory in nature, and does *not* mandate that all community service sentences be for less than 400 hours. The reason stated in the commentary for recommending that a community service sentence be no more than 400 hours is that a community service sentence of more than 400 hours would impose "heavy administrative burdens" on others. One purpose of community service by a defendant to take effect after his or her release from incarceration is, in case he or she cannot find immediate employment, to forestall any thought of a defendant to resume his or her criminal activity. *See Barajas,* 331 F.3d at 1145-6; 18 U.S.C. § 3583(d); U.S.S.G. § 5D1.3(b). And this Court has upheld a community service sentence of 500 hours in *United States v. Libretti,* No 93-8001, 1994 WL 573940 (10th Cir.1994). *See also* ***United States v. Graham,* 946 F.2d 19, 22 (4th Cir.1991).**

*3 In short, we find no error in the "community service" portion of the sentence imposed on El-Samad.

As stated at the outset of this order, in his *Anders* brief, counsel, although conceding that it was a frivolous argument, nonetheless argued, briefly, that the evidence did not support the jury's verdicts. On motion, which was granted, El-Samad thereafter filed a pro-se brief, again arguing that she was convicted on the basis of perjured testimony. We find nothing in the record that supports El-Samad's claim of perjury, and in our view the evidence supports the verdict.

II.

This case was fully briefed and placed on the calendar for May, 2004. On June 24, 2004, the Supreme Court announced its opinion in *Blakely v. Washington,* 124 S.Ct. 2531. By leave of this Court, the parties thereafter filed supplemental briefs concerning the impact, if any, of *Blakely* on the present case. It was the position of El-Samad that under *Blakely* we should invalidate the United States Sentencing Guidelines ("Guidelines"), vacate El-Samad's sentence and remand for re-sentencing. The government's position was that *Blakely* had no application to the Guidelines. On September 9, 2004, at the request of parties, we entered an order holding the present case in abeyance until the Supreme Court acted on the then pending case in the Supreme Court of *United States v. Booker-Fanfan.* The Supreme Court announced its decision in *Booker-Fanfan* on January 12, 2005. *United States v. Booker-Fanfan,* 125 S.Ct. 728 (2005). Such being the case, we are not here concerned with the Blakely case, as such, and our present task is to determine the effect, if any, of *Booker-Fanfan* on El-Samad's sentence. Neither party has sought to file a further brief on the impact of *Booker-Fanfan* on the present case, although counsel for El-Samad did cite *Booker-Fanfan* in a memorandum of supplemental authority. Be that as it may, we must, and do, consider *Booker-Fanfan* in disposing of the present appeal. *See Booker-Fanfan,* 125 S.Ct. at 768-69, *United States v. Lott,* 310 F.3d 1231,1233 (10th Cir.2002).

The Pre-Sentence Report set El-Samad's base offense level at 30. In so doing, the Report relied on U.S.S.G. § 2D 1.11 (2000) which provided that when 20 kilograms or more of pseudoephedrine is involved the base offense level is 30. The Report further indicated that, in fact, 1,173 kilograms were involved. The adjusted base offense level was ultimately set at 30, which, when coupled with a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Criminal History Category I, resulted in a guideline range of 97 to 121 months. As indicated, the district court sentenced El-Samad to 97 months imprisonment.

Counsel filed an objection to parts of the Presentence Report, contending, generally, that the record did not support the Report's recommendation. There was no objection based on Sixth Amendment grounds. Specifically, counsel's objection read, in its entirety, as follows:

> Defendant objects to paragraphs: 12, 13, 16, 18, 19, 21, 22, 25, 36, 63, and 85 of the presentence report, denies their factual accuracy, and objects to any sentence based in whole or in part therein.
>
> ***4** The Response by the Probation Officer read, in its entirety, as follows:
>
> *Response by the probation officer:* It appears that the defendant's objections are based on the amount of pseudoephedrine involved in this case and the total offense level and guideline range calculated based on these amounts. This information was obtained from DEA agents, is believed to be correct as reported in the presentence report, and can be supported by agent testimony.

It would appear from the transcript of the sentencing hearing that counsel's basic objection to the Pre-Sentence Report was the statement therein that 1,173 kilograms of pseudoephedrine was involved. Testimony from DEA agents to that effect was received at the sentencing hearing. However, at the conclusion of the hearing, the district court clearly indicated that the statement in the Pre-Sentence Report that 1,173 kilograms of pseudoephedrine was involved was really a "non-issue." In this regard, the district court noted that U.S.S.G. § 2D1.11 provided for a base offense level of 30 if "20 kilograms or more of pseudoephedrine" was involved. The district court then concluded that the requirement of "20 kilograms or more of pseudoephedrine" had been met, and that, such being the case, it did not have to decide how much more than 20 kilograms was involved. The district court overruled the objection to drug quantity, and, in this connection, there is nothing in the record to suggest that counsel believed that there was "less than 20 kilograms" involved. Further, we note that the district court sentenced El-Samad to the lowest figure within the guideline range, i.e. 97 months, the guideline range being 97-121 months. It would appear that in so doing the court was *not* proceeding on the basis that 1,173 kilograms of pseudoephedrine was involved. In thus sentencing, the district court also took into consideration El-Samad's "age" and "relative culpability."

The constitutionality of the Guidelines was not raised at sentencing, therefore we review for plain error. *United States v. Clifton,* 406 F.3d 1173 (10th Cir.2005). Applying *Booker-Fanfan,* as we must do, there was plain error because the judge found facts and treated the Guidelines as mandatory. *United States v. Dowlin,* 408 F.3d 647, 669 (10th Cir.2005) . However, El-Samad must also show that the error affected substantial rights which seriously affected the fairness, integrity or public reputation of the judicial proceedings. *Id.* El-Samad has not met these 3rd and 4th requirements of the "4-prong test." *See United States v. Gonzales-Huerta,* 403 F.3d 727 (10th Cir.2005); *United States v. Dazey,* 403 F.3d 1174 (10th Cir.2005).

We recognize that *Fanfan* holds that the Guidelines are only "advisory" and not "mandatory." However, there is nothing in the present record to suggest that the district court would have sentenced El-Samad below the guideline range. Sufficient evidence supports El-Samad's conviction and the sentence imposed.

***5** Judgment of conviction and sentence affirmed.

Slip Copy, 2005 WL 2002507 (10th Cir.(Okla.))

**Briefs and Other Related Documents (Back to top)**

- 2004 WL 1180892 (Appellate Brief) Appellant's Reply Brief (Apr. 14, 2004)
- 2004 WL 1443858 (Appellate Brief) Plaintiff-Appellee's Brief in Response to Appellant's Supplemental Opening Brief (Apr. 01, 2004)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

- 03-6166 (Docket)
  (Jun. 05, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.